# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARLON D. McKNIGHT, | ) |
| Petitioner, | ) |
| | ) Case No. 3:15-CV-475-JVB |
| v. | ) |
| SUPERINTENDENT | ) |
| Respondent. | ) |

## OPINION AND ORDER

Marlon D. McKnight, a pro se prisoner, filed a habeas corpus petition challenging his convictions and 40 year sentence by the Elkhart Superior Court on April 29, 2010, under cause number 20D03-0802-FA-6. "Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotation marks and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. [The Supreme Court has] explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of th[at] Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

> understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotation marks and citations omitted). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

## GROUND ONE

In Ground One, McKnight argues that he was denied his Sixth Amendment right to a speedy trial. The Respondent argues this claim is procedurally defaulted because McKnight's arguments in the State court did not mention the Sixth Amendment until he petitioned for transfer to the Indiana Supreme Court and by then it was too late to add a new claim. To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Id.* (quoting *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999)). In the interests of federal-state comity, both the operative facts and controlling law must be put before the state courts. *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (citing *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001); *Boyko*, 259 F.3d at 788).

2

It is true that in State court McKnight focused on violations of Indiana Criminal Rule 4(B).[1] However, "the task of the habeas court . . . is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (quotation marks and internal citations omitted). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (citing *Boyko*, 259 F.3d at 788).

There are four factors to consider in determining whether a federal claim was fairly presented to the state courts: "(1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 815.

Indiana Criminal Rule 4(B) is about the right to a speedy trial. McKnight's State court argument was that he was denied a speedy trial in violation of Rule 4(B). This argument calls to mind the Sixth Amendment right to a speedy trial and that argument is well within the mainstream of constitutional litigation. Moreover, "the time limits for bringing a defendant to trial set forth in the rule [4(B)] are . . . more rigorous than the constitutional requirements." *O'Neill v. State*, 597 N.E.2d 379, 382 (Ind. Ct. App. 1992). Thus, by finding that Rule 4(B) was not violated, the State

---

[1] The Respondent is correct that this court cannot directly review whether Rule 4(B) was violated because "federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). However, that is not what McKnight is arguing here.

courts inherently found that the Sixth Amendment was not violated. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). This is true whether the State court summarily rejects every claim or is merely silent as to a federal claim. *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). Therefore, habeas corpus relief is only available on this Sixth Amendment claim if the State court's denial was an unreasonable application of clearly established United States Supreme Court law. 28 U.S.C. § 2254(d)(1).

"The Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), set forth the now well-established standard governing Sixth Amendment speedy trial challenges. That four-part test considers: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Ashburn v. Korte*, 761 F.3d 741, 751--752 (7th Cir. 2014) (parallel citations and quotation marks omitted).

A three count information was filed against McKnight on February 4, 2008. (DE 8-1 at 1.) A total of 763 days elapsed before the trial resulting in his conviction began on March 8, 2010. (*Id*. at 7.)

> The trial court set the initial pre-trial conference for February 8, 2008, and on that day, the trial court appointed a public defender to represent McKnight. On March 6, 2008, McKnight dismissed the public defender, his private attorney entered an appearance, and the trial court set the pre-trial conference for May 1, 2008, with the delay being charged to McKnight for purposes of Indiana Criminal Rule 4(C). On May 1, 2008, the trial court reset the pre-trial conference for May 22, 2008, at McKnight's request. On May 21, 2008, McKnight requested another continuance, and the trial court rescheduled the matter for June 5, 2008. On June 5, July 17, and July 30, 2008, McKnight requested additional continuances and agreed that the delays would be charged to him in accordance with Crim. R. 4(C).

On August 21, 2008, the trial court held a pre-trial conference where McKnight's attorney was present but McKnight failed to appear.

(DE 8-12 at 2.)

McKnight does not dispute that the days before that hearing were properly attributed to him. However he argues that it was unreasonable for him to have been charged with the delay following the August 21, 2008, hearing because he was in jail when he refused to attend. McKnight argues "there is no reason why the correctional staff could not have forcefully transported [me] to the hearing on August 21, 2008." (DE 8-13 at 5.) He also argues that "the state could have set a trial date in his absence." (*Id*. at 6.) Though the trial court could have done those things, the question for this court is whether it was an unreasonable application of clearly established United States Supreme Court law for the Court of Appeals of Indiana to have found that McKnight's refusal to attend that hearing made him responsible for delaying his trial on that occasion. McKnight does not dispute that he refused to attend and that his absence disrupted the hearing. Nevertheless, the trial court did not ignore the need to move his case to trial. It ordered that McKnight be brought to the next hearing by "any reasonable means necessary . . .." (Trial Transcript at 26.) As such, McKnight has not demonstrated that the State courts' decision to find him responsible for this delay was unreasonable.

The next hearing was set for September 25, 2008. "When the cause came up on September 25, both parties agreed on April 20, 2009, as to the jury trial date. But McKnight's matter did not proceed on April 20 due to court congestion. On April 30, 2009, the parties convened and agreed to a new trial date for November 30, 2009. However, on July 9, 2009, McKnight's counsel filed a *motion for discharge* claiming that the trial setting of November 30 violated Crim. R. 4(C). The trial court subsequently denied that motion." (DE 8-12 at 3 (emphasis added)). McKnight argues

5

that it was unreasonable for the Court of Appeals of Indiana to have referred to that filing as a motion for discharge because it was captioned "Defendant's Objection to Trial Setting" and "the CCS entry on July 9, 2009 states that an objection was filed, not a motion to discharge." (DE 8-13 at 7.)

Mis-identifying the name of that filing was an unreasonable determination of the facts. However, that error is not relevant to whether McKnight is entitled to habeas corpus relief for a violation of his Sixth Amendment right to a speedy trial. The question here is whether he or the State is more to blame for the court congestion which caused his trial to be delayed. Until April 20, 2009, the State cannot be blamed for any delay. However, court congestion caused the April 20 trial date to be vacated. So starting on that date – and continuing until either McKnight caused delay or was brought to trial – the State can be blamed for delaying his trial. It is during this time when the mis-identified filing occurred. As such, it is not relevant that the Court of Appeals of Indiana referred to it by the wrong title because by whatever name, the State is responsible for the delay in this time period.

"On September 10, 2009, McKnight dismissed his attorney, deciding to proceed pro se. On October 15, 2009, McKnight filed a Motion for Early Trial pursuant to Indiana Criminal Rule 4(B)(1). Based on the date McKnight filed his early trial motion, the State had until December 24, 2009 to bring McKnight to trial. The trial court granted McKnight's motion and reset the trial date for October 26, 2009." (8-5 at 2.) Thus, as a result of court congestion, McKnight's trial was delayed 189 days from April 20, 2009, to October 26, 2009.

"The jury trial began as scheduled on October 26, 2009; however, the State filed a motion for mistrial due to impermissible communication between McKnight and a juror who had been selected. After conducting a hearing, the trial court granted the State's motion." (*Id.*) McKnight

argues "[t]he delay resulting from the improperly granted motion for mistrial should not be attributed to [him] for speedy trial purposes." (DE 1 at 3.) The Court of Appeals of Indiana found "the delay was ultimately chargeable to McKnight [because t]he determination of whether to grant a mistrial is within the trial court's discretion, and we will reverse only for an abuse of that discretion." (DE 8-5 at 5--6.) McKnight may be correct that a mistrial was not absolutely necessary. He may be correct that other alternatives were possible. However, the question for this court is whether it was an unreasonable application of clearly established United States Supreme Court law for the Court of Appeals of Indiana to have found that it was not an abuse of discretion for the trial court to have declared a mistrial after McKnight had improper contact with a juror. There being no clearly established United States Supreme Court law saying that it was improper to declare a mistrial under these circumstances, it is impossible to say that the State court did not properly apply that law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented . . . it cannot be said that the state court unreasonably applied clearly established Federal law.") (quotation marks, brackets, and citation omitted). Therefore, it was not unreasonable for the State courts to have attributed the delay caused by the mistrial to McKnight.

> On October 28, 2009, McKnight filed a second motion for early trial. At a hearing held on November 5, 2009, the trial court set McKnight's new trial date for December 1, 2009. During the November 5 hearing, McKnight filed several motions. The trial court set these motions for hearing on November 19, 2009, but warned McKnight it would not be able to hold a hearing and rule on these motions before the December 1, 2009 trial date. On November 18, 2009, McKnight filed several additional motions.
> At the November 19, 2009 hearing, the trial court again told McKnight there was not sufficient time to hear and rule on his pending motions before the scheduled trial date. McKnight wanted his motions to be heard but also wanted a continuance of the hearing because he was not prepared at that time to argue all of his motions.
> . . .

7

McKnight decided he would rather continue the trial and have a hearing on his motions at a later time, and ultimately agreed the ensuing delay in trial was chargeable to him under Indiana Criminal Rule 4(B)(1).

(DE 8-5 at 2--3.) At the hearing on November 19, 2009, McKnight said, "I agree to take the Crim. R. 4, chargeable to me, in order to hear the MOTIONS FOR SPECIAL PROSECUTOR AND DISCOVERY DISCREPANCIES, MOTION TO REWEIGH." (Trial Transcript at 164) (all caps in the original).) Because McKnight agreed that he was responsible for delaying his trial, the Court of Appeals of Indiana was not unreasonable to have attributed the delay to McKnight.

Nevertheless, McKnight argues that he could have gone to trial on December 1, 2009, if the State had provided him with the discovery they were ordered to produce before his mistrial. If that were the only motion he filed, this assertion might be debatable. However, because he filed 22 other motions[2] that were later withdrawn or denied, it is clear discovery issues were not the reason his trial was delayed. (*See* DE 8-1 at 7.) Moreover, the missing discovery was easily produced when the motion was heard. (*See* State Court docket entry found at DE 8-1 at 7) ("Defendant's 11-18-09 MOTION TO COMPEL, the court ordered the State to provide Defendant with names of witnesses – if they have a criminal history, to provide same to Defendant – and a copy of the buy money. DPA Britton orally provides Defendant with witnesses' information and provides Defendant with a Xerox copy of the buy money.").) Furthermore, the trial court offered

---

[2] Motion For Early Trial, Motion To Compel, Motion To Continue Trial For Exclusion Of Evidence, Motion To Transport Inmates From Prison For Hearing Before 3/3/10, Motion For Immediate Hearing Before 3/3/10, Amended Verified Motion For A Special Prosecutor, Motion To Reweigh Alleged Drugs, Objection To Lack Of Discovery, Motion To Compel Production Of Samples Of Evidence For Independent Chemical Analysis, Motion For Chemical Analysis Of Drugs And Reweigh, Request For Early Release Of Information Concerning Chemical Testing, Motion To Produce State's Witnesses, Motion To Dismiss Under Cr.4, Motion For Reduction Of Bail, Motion To Release On Own Recognizance, Motion To Suppress Affidavit In Support Of Warrantless Arrest, Motion For Discovery, Motion To Dismiss Selective And Vindictive Prosecutor, Motion To Dismiss For Outrageous Government Conduct, Motion For Deferral Of Non Violent Drug Offense, Motion To Release On Own Recognizance, Request For The Process And Procedures Concerning Chemical Analysis Of The Evidence, and Motion For Expert Assistance For Chemical Testing And Weight. DE 8-1 at 7.

to hear that motion to compel on November 19, 2009, but McKnight asked for a continuance. (Trial Transcript at 162--163.) If he had taken that opportunity to argue this motion, it could have been resolved immediately and he could have gone to trial on December 1, 2009. McKnight has not demonstrated that it was unreasonable for the Court of Appeals of Indiana to have attributed these delays to him.

Having reviewed the trial proceedings, the court now returns to the *Barker v. Wingo* four-part test while recognizing that:

> The speedy-trial right is amorphous, slippery, and necessarily relative. It is consistent with delays and dependent upon circumstances. In *Barker,* the Court refused to quantify the right into a specified number of days or months or to hinge the right on a defendant's explicit request for a speedy trial. Rejecting such inflexible approaches, *Barker* established a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

*Vermont v. Brillon*, 556 U.S. 81, 89–90 (2009) (quotation marks, citations, and brackets omitted).

The first question is whether the delay was uncommonly long. Though 763 days is a long time to wait for trial, given that McKnight fired his public defender, hired private counsel, fired private counsel, refused to attend hearings, filed numerous pro se motions, and caused a mistrial, the total number of days was not as excessive as the raw number otherwise appears.

The second question is whether the government or the criminal defendant is more to blame for the delay. McKnight caused much of the delay and the government did not deliberately cause any delays for the purpose of hampering his ability to defend. Only 189 were chargeable to the government because congestion caused his trial to be moved.

The third question is whether the defendant asserted his right to a speedy trial. McKnight did so numerous times, but the first time was not until 521 days after he was charged.

The fourth question is whether the defendant suffered prejudice as a result of the delay. McKnight argues that while "awaiting trial the anxiety caused hypertension and kidney issues [and he] became $2600.00 behind in [child support] payments." DE 20 at 10. Though a criminal defendant "can validly claim anxiety and concern over the pending charges . . . that is not enough to find a constitutional speedy trial violation [absent] actual prejudice [to his ability to defend against the criminal charges or] a strong showing on the other *Barker* factors." *Ashburn v. Korte*, 761 F.3d 741, 753 (7th Cir. 2014). McKnight argues that Detective James Anderson (the State's main witness) had to refresh his memory before answering a question during the trial, but witnesses frequently need to refresh their memories and this is not evidence of actual prejudice to his ability to defend against these criminal charges.

In deciding whether to grant habeas corpus relief as to Ground One, the ultimate question for this court is whether it was unreasonable for the Court of Appeals of Indiana to have rejected McKnight's claim that he was denied his Sixth Amendment Right to a Speedy Trial. "*Barker's* formulation necessarily compels courts to approach speedy trial cases on an ad hoc basis . . . .." *Vermont v. Brillon*, 556 U.S. 81, 91 (2009) (quotation marks omitted). As explained, the *Barker* factors do not weigh in McKnight's favor and there is no basis for finding that the State Court's ruling was unreasonable. Therefore, Ground One does not present a basis for habeas corpus relief.

## GROUND TWO

In Ground Two, McKnight argues that he was denied his Sixth Amendment right to counsel on direct appeal. He argues his appellate counsel was ineffective for not including a claim that the charges should have been dismissed pursuant to Indiana Criminal Rule 4(c).

> To prevail on this claim, [the habeas corpus petitioner] must show that appellate counsel failed to raise an obvious issue that is stronger than the other claims raised and that prejudice flowed from that failure. Prejudice exists if there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised.

*Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010) (citations and quotation marks omitted).

> Because appellate counsel is not required to raise every non-frivolous issue on appeal, appellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both obvious and clearly stronger than the issues actually raised. Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult because the comparative strength of two claims is usually debatable.

*Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015) (citations and quotation marks omitted).

Ground Two was adjudicated by McKnight during his post-conviction relief proceedings. The Court of Appeals of Indiana held that McKnight "waived his right to be discharged under Crim. R. 4(C)." (DE 8-12 at 7.) Whether Indiana Criminal Rule 4(C) required that McKnight be discharged is a question of State law. However, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quotation marks, citations, and brackets omitted).

McKnight argues the State court reached the wrong legal conclusion because it unreasonably determined the facts. However, as the Supreme Court in *Corcoran* explained, that argument is not a valid basis for challenging a State court's determination of State law. *Id*. at 5-6. Consequently, this court must accept that McKnight waived whatever Rule 4(C) claim he might have had. Because the Rule 4(C) claim was waived, it was clearly not stronger than the claims which were raised during his appeal. Therefore McKnight has not demonstrated that the State court unreasonably found that his appellate counsel was not ineffective. Ground Two is not a basis for habeas corpus relief.

## MOTION FOR EVIDENTIARY HEARING

McKnight filed a motion asking for an evidentiary hearing because the Court of Appeals of Indiana twice misstated facts from the record in its opinion affirming the denial of his post-conviction appeal. First, he argues that his lawyer did not seek a continuance on August 21, 2008. Second, he argues that his lawyer did not file a motion for discharge on July 9, 2009. No hearing is necessary in this case because the State court record already shows that he is correct on both points. Nevertheless, neither of these misstatements by the Court of Appeals of Indiana is relevant. As explained previously, McKnight refused to attend the hearing on August 21, 2008, and it was not improper to find that he delayed his own trial without regard to whether his lawyer asked for a continuance. Also, as previously explained, the time encompassed by his lawyer's filing on July 9, 2009, is already chargeable to the State for the purposes of the Sixth Amendment speedy trial right because congestion delayed his trial. Therefore, there is no basis for an evidentiary hearing and no need to determine whether McKnight meets the 28 U.S.C. § 2254(e)(2) requirements for an evidentiary hearing. *See Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001).

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons

explained in this opinion for denying habeas corpus relief, there is no basis for encouraging McKnight to proceed further. Thus, a certificate of appealability must be denied. For the same reasons, he may not appeal in forma pauperis because an appeal could not be taken in good faith.

## **CONCLUSION**

For the foregoing reasons the court---

- **DENIES** the motion for an evidentiary hearing (DE 21);

- **DENIES** habeas corpus relief;

- **DENIES** a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11;

- **DENIES** leave to appeal in forma pauperis pursuant to 28 U.S.C. § 1915(a)(3); and

- **DIRECTS** the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on March 27, 2017.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE